| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: March 6, 2019<br>Hearing Time: 2:00 p.m. |
| In re<br>**TRIDENT HOLDING COMPANY, LLC,** *et al.*,<br>Debtors. | Chapter 11<br>Case No. 19-10384 (SHL)<br>Jointly Administered |

**OBJECTION OF THE UNITED STATES TRUSTEE TO
MOTION OF DEBTORS FOR ENTRY OF A FINAL ORDER
AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO
(A) PAY CERTAIN PREPETITION EMPLOYEE OBLIGATIONS
AND (B) CONTINUE EMPLOYEE BENEFIT PROGRAMS AND
(II) GRANTING RELATED RELIEF**

TO: **THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this objection to the entry of a final order granting the Debtors' Motion (I) Authorizing, But Not Directing, the Debtors To (A) Pay Certain Prepetition Employee Obligations and (B) Continue Employee Benefit Programs and (II) Granting Related Relief (the "**Wage Motion**"), which motion seeks payments pursuant to various incentive programs. ECF Doc. No. 10. In support thereof, the United States Trustee respectfully states:

## PRELIMINARY STATEMENT

The Wage Motion seeks authority <u>inter alia</u> to pay the Debtors' employees (i) pre-petition wages, (ii) a variety of bonuses to certain unspecified employees amounting to an aggregate of $928,000.00, and (iii) severance payments up to an aggregate of $89,000.00. The post-petition payment of a pre-petition claim prior to the confirmation of a Plan of Reorganization is not contemplated by the Bankruptcy Code. However, courts have permitted such payments to be

made under the Doctrine of Necessity. Specifically, with respect to the post-petition payment of pre-petition wages and benefits, in appropriate circumstances and where the debtor is able to meet a heavy burden, courts have permitted these payments before confirmation of a Plan of Reorganization, reasoning that failure to pay ordinary course wages to a debtor's employees may result in a disruption to the debtor's business operations. The courts have also allowed the payments where there is no harm to the debtor resulting from the payments, because employee wages and benefits are entitled to priority status under the Bankruptcy Code and would need to be paid in full in order for the debtor to confirm a plan. Nonetheless, the Doctrine of Necessity imposes a heavy burden upon the moving party to justify payments that do not follow the statutory priorities established by the Bankruptcy Code.

The United States Trustee does not object to the Debtors' request for authority to pay their employees' pre-petition wages, vacation time, and sick leave. But with respect to the Debtors' proposal to make post-petition payments to its employees for bonuses that were earned by the employees pre-petition, not only does the Wage Motion lack sufficient information to determine if the Debtors have met their heavy burden of proof, but in view of the fact that presumably some, if not all, of these employees knew that the bonuses earned would not be paid until sometime after the fourth quarter of 2018, there is no reason why the payments of these bonuses need to be authorized by the Court outside of the normal bankruptcy scheme. Similarly, severance payments to former employees should likewise be denied, particularly to the extent that any severance payment will result in a payment to an individual employee of over the priority wage cap of $12,870.

With respect to the Debtors' request for authority to pay bonuses earned during the post-petition period and to continue the Debtors' Bonus Incentive Programs post-petition – which

requests do not warrant relief under the Doctrine of Necessity -- the Debtors should seek such authority by separate motion to this Court.

## BACKGROUND

### General Background

1.　On February 10, 2019 (the "**Petition Date**"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2.　The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.　The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. ECF Doc. No. 36.

4.　Trident is a national provider of bedside diagnostic and related services in the United States. Its services include visits to various locations by x-ray technicians, ultrasound sonographers, registered nurses, nurse practitioners, and phlebotomists. See Wage Motion, ¶ 9.

5.　On February 20, 2019, the United States Trustee appointed an Official Committee of Unsecured Creditors ("**Committee**"). ECF Doc. No. 91.

### The Wage Motion

6.　On the Petition Date, the Debtors filed the Wage Motion.

7.　In addition to fixed compensation, the Debtors seek a final order to pay any and all amounts due under various incentive bonus programs, to wit: Variable Compensation Program, Operations Bonus Program, Revenue Cycle Management Incentive Program,

Supervisor Employee Incentive Program, Retention Bonus Program (collectively, the "**Incentive Bonus Programs**"). See Wage Motion, ¶ 21.

8. After the hearing held on February 11, 2019 on the Debtors' first day motions, the Court entered an Interim Order on February 13, 2019 (I) Authorizing, But Not Directing, the Debtors To (A) Pay Certain Prepetition Employee Obligations and (B) Continue Employee Benefits Programs and (II) Granting Related Relief (the "**Interim Wage Order**"). ECF Doc. No. 63.

9. The Interim Wage Order provided for the continuation of the Incentive Bonus Programs, but did not authorize payment under the Incentive Bonus Programs. Id.

10. The following chart sets forth the various categories and approximate outstanding amounts of the Pre-petition Employee Obligations that the Debtors are seeking authority, but not direction, to pay under the Wage Motion pursuant to the Final Order:

| **Category** | **Approx. Amount Seeking to Pay During Interim Period** | **Approx. Amount Seeking to Pay on Final Basis** |
|---|---|---|
| Employee Wages and Salaries | $11,000,000 | $11,000,000 |
| Independent Contractor Claims | $1,000,000 | $1,000,000 |
| **Incentive and Bonus Obligations** | $0 | **$928,000** |
| Payroll Processing Expenses | $167,000 | $167,000 |
| Accrued PTO[2] | $5,200,000 | $6,900,000 |
| Employee Benefits Obligations | $2,000,000 | $2,000,000 |
| Employee Expense Obligations | $1,060,000 | $1,060,000 |
| **Severance Plan** | $32,000 | **$89,000** |
| Workers' Compensation Programs | $913,000 | $956,000 |
| **Total** | **$21,372,000** | **$24,100,000** |

[2] These amounts estimate accrued PTO outstanding as of the Petition Date. The Debtors expect that the Employees will use PTO in the ordinary course. In addition, the Debtors do not pay out PTO unless and

> until an Employee leaves the company. Thus, the Debtors expect to pay out only a small portion of the listed amount.

Wage Motion, ¶ 2 (emphasis added).

11. The Wage Motion seeks authority for the entry of a final order to allow the Debtors to make the payments due under the Incentive Bonus Programs up to $928,000. See Wage Motion, ¶ 2.

12. The Wage Motion seeks authority for the entry of a Final Order to allow the Debtors to make the payments due under the Severance Plan up to $89,000. See Wage Motion, ¶ 2.

**The Incentive Bonus Programs**

13. *Variable Compensation Plan*. According to the Debtors, it maintains an incentive plan (the "**Variable Compensation Program**") to reward certain sales Employees for achieving objectives relating to revenue, business retention, and client development. The Variable Compensation Program includes both quarterly and annual objectives, and payouts relating to a particular period are typically made within a few months of the end of such period. See the Declaration of David F. Smith, III Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and First Day Pleadings, ¶ 76. ECF Doc. No. 18.

14. Payments under the Variable Compensation Program for the fourth quarter of 2018 would, in the ordinary course of business, be paid in March 2019. Additionally, a portion of payments that will eventually be due for the first quarter of 2019 relates to the prepetition period. Id. at ¶ 78.

15. *Operations Bonus Plan*. The Debtors also maintain a quarterly incentive plan (the "**Operations Bonus Program**") for certain Employees involved in coordinating aspects of the Debtors' business operations under their purview. The Debtors assert that approximately 30

Employees are eligible for the Operations Bonus Program. The Operations Bonus Program awards amounts to the eligible Employees based on the achievement of financial targets relating to several aspects of the Debtors' operations that are relevant to each eligible Employee's respective business unit, including service volume, laboratory expenses, labor costs, workplace injuries, and automobile accidents. Id. at ¶ 79.

16. Payments under the Operations Bonus Program for the fourth quarter of 2018 would, in the ordinary course of business, be paid in March 2019. Additionally, a portion of payments under the Operations Bonus Program that will eventually be due for the first quarter of 2019. Id. at ¶ 80.

17. ***Revenue Cycle Management Incentive Plan***. The Debtors also maintain a quarterly incentive plan for certain Employees involved in administering the Debtors' revenue cycle management program (the "**RCM Incentive Program**"). These Employees help collect receivables on behalf of the Debtors. Id. at ¶ 81.

18. As of the Petition Date, no amounts are due and owing for 2018 under the RCM Incentive Program; however, a portion of bonus payments that will eventually become due for the first quarter of 2019 may relate to the prepetition period. Id. at ¶ 83.

19. ***Supervisor Employee Incentive Plan***. The Debtors also maintain an annual incentive plan (the "**Supervisor Employee Incentive Program**") for certain Employees performing particular middle-management functions. These Employees help administer several of the Debtors' business functions—including operations, financial planning and analysis, accounting, IT, compliance, and sales—and generally report to departmental leaders. Id. at ¶ 84.

20.     To the extent bonuses under the Supervisor Employee Incentive Program have been earned so far in 2019, a portion of such payments that may eventually become due at the end of the year would relate to the prepetition period. Id. at ¶ 86.

21.     *Retention Bonus Program.* The Debtors offer retention bonuses (the "**Retention Bonus Program**") to certain employees. As of the Petition Date, the Debtors have offered participation in the Retention Bonus Program to Employees for 2019 and 2020. Amounts payable under the Retention Bonus Program are not earned until the end of the applicable calendar year. Id. at ¶ 87.

**The Severance Plan**

22.     *Severance Plan*. Pursuant to the Company's fully discretionary severance policy, the Debtors provide severance pay and benefits to certain Employees (the "**Severance Plan**"). In addition to payment of a particular number of weeks' worth of wages, benefits under the Severance Plan for a particular Employee may also include, at the discretion of senior management, payment for certain healthcare benefits (i.e., COBRA coverage assistance) and job placement services. Id. at ¶ 107.

23.     Currently, three former Employees are receiving payments on account of the Severance Plan. As of the Petition Date, the remaining payments due to these former Employees totaled approximately $89,000. However, $40,000 of this amount was due during the Interim Period and some portion of the $40,000 may have been paid by the Debtors in accordance with the Interim Order. Two of the Employees currently receiving payments under the Severance Plan were due amounts in excess of the priority cap during the Interim Period. Id. at ¶ 108.

24.     The Interim Wage Order, provides as follows:

> The Debtors are authorized, but not directed, in their sole discretion, to maintain and administer the Severance Plan in the ordinary course of business and to pay any and all amounts due thereunder in the ordinary course of business to the extent such amounts do not exceed the priority cap.

See, Interim Wage Order. ECF Doc. No. 63.

## DISCUSSION

### A. The Motion Fails to Support the Payment of Bonuses Under the Doctrine of Necessity

As explained by Judge Lifland in In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989), the ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment was needed to facility the rehabilitation of a debtor was first articulated by the Supreme Court in Miltenberger v. Logansport Ry.Co., 106 U.S. 286 (1882), and is commonly referred to either as the Doctrine of Necessity or the Necessity of Payment rule. Under the Doctrine of Necessity, bankruptcy courts may authorize a debtor to make a post-petition payment with respect to pre-petition claims where evidence is presented demonstrating that such payments are necessary for the preservation of the estate. See also In re Gull Air Inc., 112 B.R. 152, 154 (Bankr. W.D. La. 1989) (authorizing the debtor to pay current employees' pre-bankruptcy wages, salaries, medical benefits and business expense claims. Stated differently, the Doctrine of Necessity permits the bankruptcy court to authorize the payment of pre-petition claims prior to confirmation. "To invoke the rule, however, the debtor must show that the payment is 'critical to the debtor's reorganization.'" In re C.A.F. Bindery, 199 B.R. 828 (Bankr. S.D.N.Y. 1996) (citations omitted); see also, In re Ionosphere Clubs, Inc., 98 B.R. 174 (under 11 U.S.C. § 105, the court can permit pre-plan payments of a pre-petition obligation when essential to the continued operation of the debtor).

8

The proponent's burden of proof is a heavy one, and a debtor must show that there is a necessity to pay, and not merely that the debtor has the ability to pay. Ionosphere Clubs, Inc., 98 B.R. at 179 (finding proponent failed to demonstrate that the payment of certain pre-petition wages, salary and medical benefits to "non-working employees" would benefit the estate or creditors and therefore denied the motion); In re Financial News Network, Inc., 134 Bankr. 732, 736 (Bankr. S.D.N.Y. 1991); accord In re NVR L.P., 147 Bankr. 126, 128 (Bankr. E.D. Va. 1992) ("the proponent of the payment must show substantial necessity"). Likewise, convenience, without necessity, is insufficient. In re C.A.F. Bindery, 199 B.R. 828; Eagle-Picher Indus., Inc., 124 Bankr. 1021, 1023 (Bankr. S.D.N.Y. Ohio 1991) (payment must be "necessary to avert a serious threat to the Chapter 11 process").

As discussed below, the United States Trustee does not object to the payment of pre-petition wages to the Debtors' Employees, of sums up to the statutory cap of $12,850.00. However, the Debtors' request for authority to make post-petition payments to its employees for bonuses that were earned prepetition is not supported by compelling evidence justifying the necessity to make these prepetition payments outside the scheme provided for in the Bankruptcy Code. Specifically, the Motion provides no clarity as to what work was performed, who is to receive a bonus, the position of the employee during the time that the work was performed, when the work was performed, the amount due to each employee under the specific bonus program, and so forth. Furthermore, to the extent the Debtors seek authority from this Court to allow it to continue to administer each of the Bonus Incentive Programs on a going forward basis, the Debtors must seek such authority by separate motion.

## B. The Debtors Have Not Demonstrated that Prepetition Payments Due to Employees Under the Incentive Bonus Programs and the Severance Plan Satisfy the Doctrine of Necessity

Section 507(a)(4) of the Bankruptcy Code provides that an employee claim for unpaid wages, salary, or commissions, including vacation, severance, and sick leave pay, is entitled to fourth priority treatment. 11 U.S.C. § 507(a)(4); see also, e.g., In re Grant Indus., 133 B.R. 514 (Bankr. W.D. Mo. 1991) (acknowledging high payment priority to the claims of employees for wages, salaries or commissions earned shortly before their employer files for bankruptcy); In re Performance Transp. Servs., 2013 Bankr. LEXIS 4242, 2013 WL 5492488 (Bankr. W.D.N.Y. 2013) (claims employees filed to obtain payment of wages they earned before the companies declared bankruptcy were entitled to "wage priority" status under 11 U.S.C.S. § 507(a)(4)). At the commencement of a bankruptcy case, recognizing the importance of maintaining the status quo of the estate, a debtor desiring to make payments to its employees that are outside of the priority scheme set forth in the Bankruptcy Code must present compelling reasons for so doing. The payment of prepetition employee compensation subject to the priority cap is generally authorized during the first days of the bankruptcy case in order retain employees and to alleviate the financial hardship that would be imposed upon employee who would otherwise have to wait until the confirmation of a plan of reorganization to receive unpaid prepetition compensation. Although the Interim Order permitted the payment of prepetition wages to current employees, the continuation of the bonus programs (without the authorization to make bonus payments) and severance payments to former employees subject to the statutory priority cap of $12,850.00, see ECF Doc. No. 63, the Debtors now seek a Final Order permitting them to pay bonuses in an aggregate sum of up to $928,000.00, the amounts due under the Severance Plan up to $89,000, and permission to continue the Bonus Incentive Programs.

The Wage Motion provides no specific information as to the myriad of Bonus Incentive Programs that were offered to the Debtors' employees pre-petition. At the request of the United States Trustee, the Debtors have provided additional information about the bonuses they paid -- or intend to pay -- to their respective employees pursuant to the various Bonus Incentive Programs. However, this information is not publicly available, it was not filed with the Court and is not addressed in any substantive manner in the Motion. The justification in the Wage Motion that the wage and salary payments are necessary and critical to avoid employee resignations and to maintain employee morale, may support the payment of prepetition wages and benefits up to the statutory priority cap of $12,850.00 (see the Wage Motion, ¶ 79), but that argument is not persuasive with the request for authority to pay pre-petition bonuses prior to confirmation of a Plan of Reorganization.

Initially, it is noted that Section 507(a)(4) provides that wages, salaries and commissions earned by an individual includes vacation, severance and sick pay. But the statutory provision contains no mention of bonuses. Nonetheless, some courts have allowed bonuses to be paid where the bonus was earned within 180 days prior to the petition. See In re: Cardinal Indus., 160 B.R. 83 (Bankr. S.D. Ohio 1993) ("[e]ntitlement to a bonus alone, however, does not establish a priority claim"… and the focus of 507 should be upon the time the individual performed the service). Unfortunately, even if this Court were inclined to permit the post-petition payment of a bonus earned pre-petition, the information contained in the Motion regarding each of the Bonus Incentive Programs is insufficient to allow the Court to make a reasoned determination as to whether the Debtors have met their heavy burden. Furthermore, although not entirely clear, it appears that some – if not all -- of the employees who may have either qualified or earned bonuses prior to the bankruptcy filing had no expectation in receiving a pre-petition bonus at the

11

time that the petitions were filed. In other words, for these employees, the Debtors' argument that the employees would leave because they had not been paid a bonus at or around the first day of the filing of the Petitions is not persuasive.

Further, the Debtors' explanation that their employees will leave for other employment is simply too remote and speculative and does not substantiate invoking the Doctrine of Necessity which as previously stated places a heavy burden upon the Debtors to meet. In short, the Debtors' request that the Court authorize payments under the Incentive Bonus Program has not been shown as necessary to avert a serious threat to the Chapter 11 process. See e.g., Ionosphere, 98 B.R. at 175-76 (the justification provided by the union was submitted in the abstract and the issue of equity will be dealt with at the proper time in terms of distribution pursuant to a plan of reorganization or otherwise), and In re NVR L.P., 147 Bankr. 126, 128 (Bankr. E.D. Va. 1992) (the possibility of a consultant dishonoring a non-solicitation agreement is too remote and speculative to justify invoking the "necessity of payment" rule). Similarly, severance payments to former employees is even less justified given that the Debtors do not seek to retain these former employees.

To that end, the Debtor has failed to meet their burden that payments under the Incentive Bonus Programs of up to $928,000 and under the Severance Plan of up to $89,000 should be authorized pursuant to the Doctrine of Necessity. Consequently, the Debtors' request to make bonus and severance payments must be denied.

> C. **The Debtors' Request to Authorize Bonus Payments Earned During the Post-Petition Period Should be the Subject of a Separate Motion**

Finally, the Debtors seek authority to continue the bonus programs during the post-petition period. It is not proper or necessary to seek the continuation of the bonus programs

during the post-petition period pursuant to first day motions, particularly when such programs may be subject to the provisions under Section 503(c). All post-petition bonuses should be the subject of a separate motion, specifically addressing the requirements of Section 503(c) of the Bankruptcy Code.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Debtors' requested relief to authorize payments under certain bonus programs and a severance plan, and grant such other relief as the Court deems fair and just.

Dated: New York, New York
February 27, 2019

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Brian Masumoto*
Brian Masumoto
Trial Attorney
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500